Clay County vs. Simonsen, et al.

## CLAY COUNTY V. SIMONSEN, ET. AL.

*1. OFFICER EX-OFFICIO:* BOND: LIABILITY. The statute provided for the election of a judge of probate, fixed his bond, and further provided that he should be *ex-officio* county treasurer. *Held:*—That his bond as judge of probate covered his duties as county treasurer, and that he and his sureties would be liable thereon for any breach of its conditions in the discharge of the duties of either office.

*2. PRACTICE:* DEMURRER: DEFECTS IN COMPLAINT. Upon the argument of a demurrer to an answer the defendant may attack the complaint upon the grounds that the court has no jurisdiction, or that the complaint does not state facts sufficient to constitute a cause of action. And if it appears that the objections thus raised are well taken, the defendant will be entitled to judgment, notwithstanding the defects in the answer.

*3. ——:* COMPLAINT: ESSENTIAL AVERMENTS. The words " facts constituting a cause of action," as used in the Code of Civil Procedure, mean those facts which the evidence upon the trial will prove, and not the evidence which will be required to prove the existence of the facts.

*4. ——: ——: ——.* Every fact which the plaintiff must prove, to enable him to maintain his suit, and which the defendant has a right to controvert in his answer, must be distinctly averred and set forth according to their legal effects and operation, and not the evidence of those facts, nor arguments, nor inferences, nor matters of law only.

*5. PUBLIC OFFICER:* DUTY TO ACCOUNT: DEMAND. When the law makes it the duty of a public officer, in retiring from office, to account and make return to the proper authorities, and to deliver to his successor in office all public records, books, papers and funds pertaining to his office; upon failure or refusal to do so, no demand is necessary before bringing suit.

*6. ——:* BOND: CONDITIONS. The bond of a judge of probate and *ex-officio* county treasurer was conditioned that " he shall well and faithfully, and impartially perform the duties and execute the office * * without fraud, deceit, or op-

Clay County vs. Simonsen, et al.

pression." *Held:*—That his liability was that of an insurer, and not measured by the law of bailments, and that he was bound, not to exercise due care and diligence in the discharge of his duties, but to perform them absolutely, without conditions or exceptions, unless prevented by an irresistable super-human cause, or by the act of a public enemy.

7. *IRRESISTABLE SUPER-HUMAN CAUSE:* IN WHAT IT CONSISTS. The words "irresistable super-human cause," are equivalent to, and are used in the same sense as "act of God," and consists in natural necessity, as wind and storms which arise from natural causes, and which operate without any aid or interference from man, and is distinct from inevitable accident.

8. ————: ACCIDENTAL FIRE: EXCUSE. Accidental fire, not caused by lightning, is not an irresistable super-human cause, and will not excuse from the performance of an obligation, unless especially so stipulated, or when the party is bound only to the exercise of reasonable care and diligence.

9. *PUBLIC FUNDS:* SAFE KEEPING: LIABILITY OF TREASURER. The fact that a county fails to furnish a *safe*, on request of the county treasurer, is no excuse for the non-performance of his obligation. He becomes personally responsible, and in the absence of any statutory provision, must provide for the safe keeping of the funds and property coming into his hands.

## *Appeal from Union County District Court.*

THIS is an action brought on the official bond of defendant Simonsen, the conditions of which are as follows: "Whereas the above bounden, R. J. Simonsen, has been duly elected to the office of probate judge of the county of Clay, in the Territory of Dakota aforesaid, at the regular annual election in and for said county, on the second Tuesday of October, A. D. 1874. Now, therefore, if the said R. J. Simonsen shall well and faithfully and impartially perform the duties and execute the office of probate judge of the said county of Clay, during his term in said office, by virtue of said election, as aforesaid, without fraud, deceit, or oppression, then the above obligation to be void and of no effect, otherwise to remain in full force."

Simonsen entered upon the duties of said office on the 4th day of January, 1875, and held the same until about the 20th of the same month, when he resigned and his successor was appointed, qualified and entered upon the duties of said office. That during that time there came into his possession as such probate judge and *ex-officio* treasurer of said county,

all the books, records and papers pertaining thereto, and a large sum of money belonging to the different funds of said county.

On or about the 15th day of January, 1875, the building in which said Simonsen kept his office, took fire and burned down, whereby all of said books, records and papers, including, as defendants allege, the money belonging to plaintiff, were consumed and wholly destroyed. It is alleged in the complaint that the burning of said office with its contents, was through the negligence, carelessness and want of proper diligence on part of defendant Simonsen, which is denied in the answer.

No settlement or accounting was ever made by Simonsen with plaintiff, and none of said books, records or papers, nor any of the money belonging to plaintiff, nor any part thereof, was ever turned over and delivered by Simonsen to his successor in office.

No adjustment of Simonsen's accounts by the county commissioners, nor any demand on Simonsen is alleged or pleaded in the complaint.

Defendants set out in their answer that the paper sued on, purporting to be a bond, is not such a bond as the statute required defendant to execute, and that it was required by the county commissioners of Simonsen and his sureties in violation of the provisions of the statute. It is further alleged in the answer that Simonsen repeatedly requested the agents of plaintiff to procure for him a safe in which to keep the books, papers and money pertaining to his office, but that they refused.

To the answer plaintiff interposed a general demurrer, which was by the Court sustained, *pro forma*, and defendants appeal.

*J. P. Kidder, J. L. Jolley* and *Bartlett Tripp*, attorneys for appellants.

This case comes up on demurrer to the answer which, of course, reaches back and puts in issue every defect of the complaint, in which it does not state facts sufficient to constitute a cause of action.

Clay County vs Simonsen, et al.

Plaintiff alleges: "That on or about the 13th day of January, 1875, the said R. J. Simonsen did carelessly, negligently and of his own fault, and for the want of proper care and attention on his part, permit the building in which he kept his said office, to take fire and burn down. That through the neglect and carelessness of said R. J. Simonsen, all the books, records, papers and documents pertaining to his said office, the property of the plaintiff, were then and there wholly consumed by fire."

Plaintiff further alleges: "That thereafter, to-wit: on or about the 22nd day of January, 1875, defendant, R. J. Simonsen, resigned his said office to the Board of County Commissioners of said county, who thereupon appointed as his successor in said office William Shriner; that said William Shriner has long since filed his bond, properly approved, as the law directs, and entered upon the discharge of the duties of said office, but that said R. J. Simonsen has failed and refused, and still fails and refuses to account for said money, books, records, papers and documents, or any part thereof, or to deliver the same to his successor in office, or to any other person or persons authorized by law to receive the same."

These are the only breaches alleged in the complaint. As to the first of these, the answer admits that the records, etc., were consumed by fire, but denies the negligence.

Plaintiff demurs to the answer, the effect of which is to admit that all the money, records, etc., were consumed without any negligence on the part of Simonsen, so that the only breach of this bond assigned and raised by the demurrer is that he has failed and refused to account for said property, or to turn over the same to his successor in office.

This allegation is not sufficient. It is true the act of 1868–9 page 175, § 36, "requires the treasurer to render his accounts to and settle with the county commissioners at the time required by law, and pay into the county treasury any balance which may be due the county, 'and order suit to be brought in the name of the county therefor.'"

But the next section provides that "if he neglect or refuse so to do, the commissioners shall adjust the accounts of such delinquent according to the best information they can obtain, and ascertain the balance due the county, and order suit to be brought in the name of the county therefor."

Section 98 of the revenue law, 1868–9, page 302, also provides, "that each county treasurer, on going out of office, shall deliver to his successor in office all public moneys, books, accounts, papers and documents in his possession; and in case of his death, his legal representatives shall, in like manner, deliver up all such moneys, books, accounts, papers and documents as shall come into their possession."

And section 99, following, provides: "If any county treasurer shall fail to make return, fail to make settlement, or fail to pay over all money with which he may stand charged, at the time and in the manner prescribed by law, it shall be the duty of the county clerk, on receiving instructions from the territorial auditor, or from the county commissioners of his county, to cause suit to be instituted against such treasurer and his sureties, or any of them, in the district court of his county."

Section 80, same act, page 296, provides for semi-annual settlements with the treasurer, on the first Mondays of May and October of each year, but further provides "that the county commissioners may require the county treasurer to settle with them at any time." And provides the manner of settlement, requiring the vouchers to be left with them for evidence of settlement, and closes with the provision that "if the treasurer's accounts are correct, the commissioners shall certify the same; if not, he shall be liable on his bond."

These provisions clearly point out the proceedings necessary to establish a breach of the treasurer's bond, and these steps must be strictly taken. As the Court, *Sixon v. Kelly* say: "The rule of law is settled that statutes conferring power upon municipal officers must be strictly construed, and the doctrine that municipal bodies can exercise only such powers as are especially granted them, or such as are necessary to carry into effect the powers expressly granted, is too well settled to cite authorities in support of it. (3 Neb., 104.)

Dwarris lays down the rule: " Where a new right, or the means of acquiring it, is given, and an adequate remedy for violating it is given in the same statute, the injured parties are confined to that remedy." (13 Barb., 209; 1 Mann, 193; 32 Me., 553; 7 Hill, 575.)

"If the statute confers a right, and prescribes an adequate remedy for protecting it, the party is confined to statutory remedy." "If the enforcing tribunal is specified, the designation forms a part of the remedy, and all others are excluded." (4 Burr, 1322; 13 Barb., 209; Potter's Dwarris, 286, n. 5.)

And Chief Justice Parsons lays down the rule very clearly and tersely in *Franklin Glass Co. v. White:* " When a statute gives a new power, and at the same time gives a means of executing it, those who claim the power can exercise it in no other way." (14 Mass., 286-9.)

A county has no power to bring suit, only as such power is conferred by statute, and the statute must be strictly followed.

The Legislature has conferred upon the county commissioners the right to take a bond, and to have suit instituted for a breach thereof, but in the same statute it has fully pointed out the steps to be taken to establish such breach. It is not sufficient to allege that defendant Simonsen fails and refuses to account for said property, or to deliver over the same to his successor in office, and demand the full penalty of the bond. The amount due from the treasurer must be liquidated, and liquidated in the manner pointed out by the statute, before a breach can be declared, and suit brought upon the bond. The complaint must allege a settlement with the treasurer, and a failure to pay over, or that he neglected or refused to settle, and the adjustment of his accounts by the county commissioners, according to the best information they can obtain.

This precise point seems to have arisen in Arkansas, where the statute is almost precisely our own, differing only in this: that their board of county commissioners is called a "court." and appeals are taken from their decision the same as we appeal from the decision of the board to the district court. The syllabus of the case is as follows:

" In a suit on a collector's bond, for failing to pay over the county revenue after he had collected it, the declaration must contain an averment either that the collector had settled with the county court, and failed to pay over the amount due, or that he failed to settle, and that the county court proceeded to adjust his account, and rendered judgment against him. An adjudication by the county court is conclusive evidence against the securities, as well as the collector, in an action upon his bond in the circuit court." (15 U. S. Dig., 95, §§ 40–41; *Jones v. State*, 14 Ark., 170.)

This case is followed in a later case in the same state, (*Lee v. State*) and the same principle enunciated. Citing and approving *Jones v. The State*, (22 Ark., 231–235.)

By section 25, chap. 23, laws of 1862, page 258, in which the probate judge is made *ex officio* county treasurer, he is required to report to the board of county commissioners on the first Monday of June of each year the amount of county funds in his hands, and as often thereafter as demanded of him. (1862, page 258, § 25.)

There is no *allegation* in this complaint of any demand upon the treasurer to report the funds in his hands; and these sureties cannot be charged with a breach of their principal's undertaking until the obligees show the Court that they have done all that was incumbent upon them by the statutes. In Mississippi, where it seems the treasurer is bound to pay over the moneys in his hands upon warrants drawn upon him by the county court, it was held that " a petition which charges that the county treasurer has received money which he neglects and refuses to pay over to the county, does not sufficiently assign a breach of the bond. It must aver that warrants have been drawn upon him by order of the county court." (15 U. S. Dig., 92, § 67; 17 Miss., 503.) It is claimed by the plaintiff that although this is not a statutory bond, yet it is good as a voluntary or common law bond.

The laws of 1862, chapter 23, page 258, section 22, require the probate judge before he enters upon the duties of his office to execute to the board of county commissioners a bond in the penal sum of $4,000. The bond required of the probate

judge and given by him, was in the penal sum of $8,000, or double the amount required by statute. There are a number of cases that hold that a bond given for a larger amount than the statute requires is absolutely void. This is the doctrine of the *United States v. Morgan*, 3 Wash. C. C., 10; and the same doctrine is held in *Stewart v. Lee*, 3 Call.; and in the *United States v. Speake*, 9 Cranch, 28.

The only case holding the contrary of this doctrine so far as I have been able to discover is, *State of Nevada v. Rhoades*, 6 Nev., 352, where the court hold that a treasurer's bond given for $102,500, where the statute required a bond for only $100,-000, which was given voluntarily, by mistake or otherwise, was not void, the jury having given verdict for $100,000; but in that case, while this was one of the points raised by counsel for reversing the case, and the court in fact, pass upon this question, yet the court does reverse the case upon other grounds so that the opinion of the Court upon this question is really but dictum after all.

But we do not rest our case upon the allegation that the bond was for an amount greater than required by statute, but we say it was not a voluntary bond; it was extorted from the defendant Simonsen, under color of office; it was made a condition precedent to his holding the office and receiving the emoluments thereof, and is therefore not voluntary, and is void. The courts have held in all cases of appeal in criminal cases where the bond is required for a larger sum, or is more oppressively conditioned than is required by statute, it is void. In *U. S. v. Goldsteins' Sureties*, 1 Dillon, C. C., 413, where the U. S. commissioner had fixed the bonds of defendant, in two cases, one at $500 and the other at $200, to appear and answer at the next term, and but one bond of $700 was taken, the defendant not appearing, in an action upon the bond against the sureties, the Court held (Dillon Judge):— "Bonds or recognizances of this character are binding only where taken in pursuance of law and the order of a competent court or officer. No order was made authorizing a single bond for $700, and the bond taken was a substantial departure from the bonds required by the commissioner, and was

Clay County vs. Simonsen, et al.

not therefore obligatory on the sureties." (1 Dillon, C. C., 413.) In which Justice Miller concurs.

Same doctrine is held, *State v. Buffum*, also in the *People v. Cabannes*, 20 Cal., where the magistrate had taken a bond different in its condition from that required by statute. The Court held: "In taking the bond the justice has exacted a security which the statute does not require, and such being the case we are of the opinion that no liability resulted from its execution." This seems to be the settled doctrine in all criminal cases—they are held by the court not to be voluntary bonds—and where not allowed by the statute they are void. And it seems to be now the settled doctrine of the United States courts in all cases of bonds extorted *colore officii* to declare them illegal and void.

This question was squarely raised in *United States v. Tingey*, 5 Pet., 115, where an officer of the government had required of one Deblois as purser, a bond different in its conditions from that prescribed by statute and obliged him to give such bond as a condition to his holding such office and receiving the emoluments. In an action upon the bond against the surety Tingey, the Court, Story J., held: "It was plainly then, an illegal bond; for no officer of government has a right, by the color of his office, to require from a subordinate officer as a condition of holding office that he should execute a bond with a condition different from that prescribed by law—that would be, not to execute but to supersede the requisitions of law." (5 Pet., 115; 9 Curtis, 248–50.)

This case was determined upon this point alone, the plaintiff having demurred to the plea in the court below, and judgment having gone for the surety in the court below, the court above affirmed the judgment. This case is cited and approved: (10 Pet., 343; 12 Pet., 657; 15 Pet., 290; 7 How., 573; 12 How., 98; 10 Wall., 395.)

There is no contrary doctrine found in the cases, except in 5 Mass., 317, where a replevin bond by the plaintiff was required by the officer and given, conditioned to be void if the plaintiff recovered judgment, else of full force and effect,

varying from the ordinary condition provided by statute. The Court hold in that case it was a voluntary bond, and they say it was not more oppressive in its conditions than the bond provided by the statute.

In many respects the case is to be distinguished from the one at bar. It did not appear in that case that the obligors made any objections; it did not appear that either of them knew at the time but that it was the proper bond; it does not appear that the officer made such a bond a condition precedent to taking the property. And the Court, upon what is stated in the pleadings might well hold that it is a voluntary bond.

The liabilities of sureties are *strictissimi juris.* Cooley on taxation, says: "In general the liabilities of sureties on these official bonds are the same as those on other undertakings of third persons. The undertaking of a surety is always looked upon as *strictissimi juris*, and cannot be extended beyond the exact terms of his undertaking. His position is essentially different from that of the officer himself. The latter in accepting the position has the obligation imposed upon him by law to perform its duties, but the former has only entered into a contract and consented to be bound by the terms of that, but by nothing else. The law creates for him no obligation whatever." (Cooley on Taxation, 502.)

The defendants have, by their obligation, undertaken that: "If R. J. Simonsen shall well and faithfully and impartially perform the duties and execute the office of *probate judge* of said county of Clay during his term in said office by virtue of his said election as aforesaid, without fraud, deceit, or oppression, then the above obligation to be void."

Now, if the defendant Simonsen has well, faithfully and impartially performed the duties and executed the office of probate judge without fraud, deceit, or oppression, the condition of the bond is not broken, and the action must fail. What are the duties of probate judge? They are specified in the Probate Act of 1864–5, then in force; and by section 23, Act 1862, page 258. It is contended by plaintiff's counsel that the office of probate judge and county treasurer are but one

office; that the provision of section 25, 1862, making the probate judge county treasurer *ex-officio* is but an enlargement of the duties of his office—without creating a new office—and that a bond executed for the faithful and impartial performance of the duties and to execute the office of probate judge, is a bond to also perform faithfully and impartially the duties and execute the office of treasurer.

The defendants contend that the office of probate judge and county treasurer though allowed to be filled by the same person are as much distinct and separate offices, and the duties of each as separate and distinct, as though filled by different persons. His duties are judicial; they are well and clearly defined, and though our Organic act is silent as to the powers and jurisdiction of the probate court, yet so well settled and so well understood are the rules and principles of law governing and controlling these courts that Congress in framing our Organic act and conferring upon the various courts their several jurisdictions, dismissed the probate court with the simple requirement that its jurisdiction " shall be limited by law," and in the well considered case of *Ferris v. Higley*, 20 Wallace, 375, where the Legislature of Utah undertook to enlarge the powers and duties of this court by giving to it chancery and common law jurisdiction, the Supreme Court of the United States say, (after quoting that part of our Organic act conferring jurisdiction upon the probate court, that " it shall be limited by law,") as to what part of the judicial power is vested in this court by the Organic act: " The answer to this must be sought in the general nature and jurisdiction of such courts as they are known in the history of the English law and in the jurisprudence of this country. It is a tempting subject to trace the history of the probate of wills and the administration of the personal estates of decedents from the time that it was held to be a matter of exclusive ecclesiastical prerogative down to the present. It is sufficient to say that through it all to the present hour it has been the almost uniform rule among the people who make the common law of England the basis of their judicial system, to have a distinct tribunal for the establishment of wills and the administration

of the estates of men dying either with or without wills."
(20 Wall., 382.)

And the case holds that this Organic court of ours, so briefly
defined, is yet so clearly and carefully limited in its jurisdic-
tion, that the Legislature of a Territory cannot impose upon
it a single additional power or duty not known and recog-
nized in the line of decisions of the common law. What then
are the duties, and what is it to execute the office of probate
judge, which the defendants have undertaken that Simonsen
shall do faithfully and impartially without fraud, deceit, or
oppression?

This office is a judicial one. Section 23, chapter 23, laws of
1862, requires the "probate judge to keep a record of all or-
ders, decrees and other official acts, made or done by him,
which record shall be opened to the inspection of all persons
without charge."

This explains what the Legislature that created the office,
regarded as official acts of the probate judge, and the probate
record kept by these judges will explain what the judges
have understood to be their official acts which they are obliged
by law to record. Did this plaintiff go to the probate record
to find the official acts of Simonsen as county treasurer? The
records of the offices of probate judge and county treasurer
are as distinct as the offices themselves; and anyone—the
most ignorant—would as quick think of examining the sex-
ton's record for births or marriages as of examining the pro-
bate record for the official acts of county treasurer.

Section 25 of said Act of 1862, by which the probate judge
is made *ex-officio* treasurer, is peculiar in its language. It
does not say that the probate judge shall perform the duties
of county treasurer, but it says: "The several judges of
probate shall be county treasurers *ex-officio*." It says in effect
that one man shall hold the two offices; that by virtue of be-
ing elected probate judge, he is elected county treasurer.

The statute creating the offices, describes them as separate
offices, and the same distinction is kept up with scarcely a
variation throughout the statutes. Plaintiff claims the offices
were made separate for the first time in 1874–5. Were they?

The law of 1874-5, which covers the whole subject of county officers and is substantially the law now in force, after naming the office of probate judge and prescribing the manner of his qualification prescribes his duties as follows: Section 76— "That the judge of probate of each and every county in this Territory shall perform all and singular the acts and duties which now are or which may be hereafter prescribed by law for judges of probate to perform." (Laws of 1874-5, page 57, § 76.) And after naming the county treasurer, and prescribing the manner of his qualification, his duties are prescribed as follows: Section 82—"That the county treasurer of each county in this Territory shall perform all and singular the acts and duties which now are or which may be hereafter prescribed by law for county treasurers to perform."

These sections clearly indicate that the Legislature understood the offices of county treasurer and probate judge to have been separate and distinct, and the duties of the one to have been different from the duties of the other; for, if the theory of this plaintiff be correct, that by the Act of 1862, the duties of the probate judge were simply enlarged, and that it was not a new office with new duties imposed upon him, then, when the Legislature of 1874-5 enacted that the probate judge "shall perform all and singular the acts and duties which now are prescribed by law for judges of probate to perform," it enacted that he should still perform the duties and acts of county treasurer. And when it enacted that the county treasurer shall perform all and singular the acts and duties which now are prescribed by law for the county treasurer to perform, it enacted that he should perform *no acts or duties*; for, by the theory of plaintiff, there are no acts and duties for the treasurer to perform. They are the duties of the probate judge. So that the office of probate judge and treasurer are still one, if plaintiff's view of these offices is correct.

The amount of the bond required of the probate judge would not seem to indicate that it was to cover his duties as treasurer. It is a responsible position. Large estates were liable to be subject to his official action, and if any bond at all was required, $4,000 would not seem large where suit

might be brought thereon for non-feasance or misfeasance in office by an aggrieved party. In the neighboring state of Nebraska, they have fixed the judge of probate's bond at not less than $5,000, which may be increased to $10,000. Other States vary in the amount of probate judges' bonds. In Minnesota it is but $1,000, while in some, no bond at all is required.

In California, under a statute similar to ours, making the sheriff *ex-officio* tax collector, where the bond was executed for the faithful discharge of his duties as sheriff, and the breach assigned consisted in his failure to pay over moneys collected by him as taxes in his *ex-officio* capacity of collector, Judge Field says: "The offices of sheriff and tax collector are as distinct as though filled by different persons. The duties and obligations of the one are entirely independent of the duties and obligations of the other. The case of *Merrill v. Gorham*, 6 Cal., 41, only decides that there is no constitutional inhibition to the exercise of the two offices by the same person. The offices are not so blended that the bond executed for the faithful performance of the duties appertaining to the one would embrace, in the absence of the statute, the obligations belonging to the other. The duties of sheriff, as such, relate to the execution of the orders, judgments and process of the courts; the preservation of the peace; the arrest and detention of persons charged with the commission of a public offense; the service of papers in actions and the like; they are more or less directly connected with the administration of justice; they have no relation to the collection of revenue." (9 Cal., 292.)

The case while determining that the offices are separate and distinct, turned upon the construction of the Revenue act, which provided that the sheriff should be liable on his bond for the discharge of his duties in the collection of taxes.

The doctrine of this case is followed and approved in the *People v. Love*, 25 Cal., 521, 528, and again in *Lathrop v. Britain*, 30 Cal., 680, under the same law where the sheriff was allowed a deputy, but there was no provision for a deputy tax collector.

This case (*People v. Love*) strikes the question of two offices squarely, and was the only question to be determined; and it follows the line of decisions already made, and settles the question, that though the offices are held by one person, they are yet separate and distinct offices.

Plaintiff below insisted that the California decisions were based upon their Constitution, and that but for the provision of their Constitution, the Court would have come to a different conclusion. Judge Field, in *People v. Edwards*, determines the question that they are distinct offices upon the nature of the offices without any reference to the Constitution; saying only: "The case of *Merrill v. Gorham*, 6 Cal., 41, only decides that there is no Constitutional inhibition to the exercise of the two offices by the same person." (9 Cal., 292.)

And the Court, in *Lathrop v. Britain*, 30 Cal., 683, after quoting the sections of the Constitution and referring to this objection, says: "The mode provided for the election of tax collector is an attempt to comply with the Constitutional requirement to the effect that the tax collector shall be elected by the electors immediately concerned."

And admitting the force of previous decisions that there was no Constitutional inhibition to the same person holding the two offices, it will be observed that all there is of the Constitution of the State of California as set out in *Lathrop v. Britain*, 30 Cal., 683, upon this question, is the provision. requiring the sheriffs and tax collectors, &c., to be elected by the qualified electors, etc.

In 38 California, 76, *People v. Ross*, the question of the two offices of sheriff and collector came before the Court upon the sheriff's bond, sued upon for a breach as tax collector. And the Court here decide that he is not liable. The Court says:— "In the absence of any statute expressly providing that one official bond only shall be required of a person who holds both offices, and that such bond shall be for the faithful performance of the duties of both offices; a separate bond for each is as much required as if they were held by different persons."

This is the conclusion of California in a line of cases more

similar to the one at bar than can generally be found upon the argument of a legal proposition. They are almost conclusive of the main question here involved, to-wit: Are, or were, the offices of treasurer and probate judge, two or one office? The question was raised in Ohio, *State v. Medary*, 17 Ohio, 554, where the board of public works consisting of five members, were permitted to select from the board a number of " acting commissioners " who were entrusted with the funds, their disbursement, &c. The acting commissioners only were each required to give bond for the faithful discharge of the duties of his office. One of these acting commissioners gave bond for the faithful discharge of the duties of a member of the board of public works, upon which suit was brought, alleging as a breach, failure to account for moneys that came to his hands as acting commissioner. The Court held that there were in effect, two offices; that the duties of each were distinct, notwithstanding the fact that no one could be an acting commissioner who was not a member of the board. And a bond given for the performance of a part of the duties of an office could not be construed to extend to all the duties that might be imposed.

In the *State v. Johnson*, 55 Mo., 80, the School law provides: " That the county treasurer in each county shall be the treasurer of all funds for school purposes belonging to the different townships, arising from whatever source." It also provided that he should give a separate bond conditioned for the faithful disbursement of these moneys. The Court holds upon a suit upon the general bond of the treasurer, no separate bond having been given, that they are separate offices.

But if, as was argued by plaintiff below, the fact that a separate bond was required had much to do with determining that case, we submit that it was only evidence of the Legislative intention, like any other fact, going to show that the Legislature intended them to be separate offices, though filled by the same person. And when our Legislature in 1868-9, page 303, §§ 101 and 102, provided that " whenever in the opinion of the county commissioners, more money shall have passed, or is about to pass into the hands of said treasurer

than is or would be recovered by the penalty in the previous bond," they are authorized to demand and receive from him an additional bond in such sum as they, or a majority of them may direct.

Did it mean that the *probate judge* might be required to give a bond of $8,000? or, did it not by implication, if not in direct terms, say that the treasurer under the circumstances therein named could be required to give a bond additional to this official bond as treasurer?

Does not this section like all the previous statutes upon this subject imply that a separate bond is to be given by the treasurer? What does this provision mean, if not this: that the treasurer shall give a separate bond, and an additional bond when required by the county commissioners under the statute? Plaintiff will hardly insist that it means an additional bond can be required of the probate judge—that treasurer means probate judge, and that whenever the statute reads "treasurer" it should read "probate judge." By arriving at such a conclusion our tax deeds would be as good signed by the probate judge as by the treasurer, and our deputy treasurer would be our deputy probate judge, and other results as ridiculous and absurd would follow from such interpretation of the statutes. It is and must be conceded that each case stands and must stand upon its own foundation, and the sureties are to be held by the terms of the bond, or not at all. As said by the Court in 17 Ohio, 565, *State v. Medary, et. al:*

" The bond speaks for itself; and the law is that it shall so speak; and that the liability of sureties is limited to the exact letter of the bond. Sureties stand upon the words of the bond, and if the words will not make them liable, nothing can. There is no construction, no equity against sureties. If the bond cannot have effect according to its exact words the law does not authorize the Court to give it effect in some other way in order that it may prevail. It is not like a grant where everything is construed most strongly against the grantor, and where the intent governs and will be sought after from the object or extrinsic facts, to give such construction to words as to carry into effect the intention of the parties." (17 Ohio, 565.) The same doctrine is laid down in the late case of *People v. Pennock*, 60 N. Y., 421–26.

There is no doctrine contrary to that laid down in the cases cited, that I have been able to discover. The Court in Nebraska (1 Neb., 182,) it would seem, on a first reading of the case, came to a different conclusion; but on a careful study of that case, I think it clearly appears that the Court determine the case upon another point.

It was a case of *quo warranto* against the county clerk acting as district court clerk without giving additional bond; and the Court while discussing the question of two offices really determine the case upon the ground that it did not appear that the county clerk had ever refused to qualify or give the bond as District Court clerk. That such a statute was directory only in any event, and if such a bond was required, a mere failure to give it, would not disqualify. There must be a refusal before he could be deprived of his office. In which conclusion Judge Mason concurs, but does not agree with their reasoning upon the other question. The defendants therefore submit that no breach of the bond has been assigned; that the principal, Simonsen, has done all that he, by the terms of his bond and his sureties by their contract, undertook that he would do. That neither by the terms of the bond nor the statutes then in force, can they be liable for any other than the acts of the principal as probate judge in the discharge of the duties of that office; that if such bond would otherwise have any force or effect in law, the illegal acts of this plaintiff by their acts of extortion and oppression under color of office, have annulled and canceled the obligations of these defendants; and that plaintiff's demurrer must be overruled.

*Alex. Hughes*, for appellee.

The bond is sufficiently sealed. (Civil Code, p. 151; Laws of 1862, p. 273.) Defendants state in the bond that it is signed and *sealed* by them, and they are now estopped from denying it. (54 N. Y., 40; 50 Howard, [N. Y.] 390; 5 Johns. Ch. 288; 28 N. Y., 323.)

It is well settled that the several persons who execute a sealed instrument, may use or adopt the same seal. (54 N. Y., 41; 9 Johns. 285; 10 Baily, 383; 27 N. Y., 564; 4 Wis., 96.)

The defendants are estopped from denying the validity of the bond. It was executed by them voluntarily, their principal had the full benefit of it as a legal bond; he obtained possession of the office, money, books, etc., by reason of this bond, and they cannot now claim that it is illegal. (5 Mass., 317; 1 Dillon, 295 note.)

It is no defense to an action on an official bond that the principal did not take the oath of office and qualify, as required by law. (*State v. Findley*, 10 Ohio, 51; *People v. John*, 22 Mich., 461.) It is too late to raise the question as to the validity of an official oath after the state has consented to waive the objection, and after the principal has enjoyed the benefits of the office. (8 Wend., 483; 2 Pick., 581; 10 Ohio, 51; 5 Mass., 317; 3 Conn., 192.)

There was no such office as county treasurer at the time the defendants executed the bond sued on in this case, separate and distinct from that of judge of probate. They were not separate and distinct offices. Laws of 1862, page 254, provides that "each organized county shall have the following described " officers, to-wit: three county commissioners, a register of " deeds, sheriff, judge of probate, coroner, justices of the " peace, constables, county surveyor and district attorney." The office of county treasurer, as a separate office, was not created by this act, but it is expressly provided in section 25 of this act that the several judges of probate in this territory shall be county treasurers *ex officio*, and shall perform all the duties of that office.

The Legislature in 1872 recognized but one office. It is provided in chapter 33 that when the assessment in any county exceeds $20,000, the *judge of probate* shall be paid a salary of $600. Had the Legislature created these offices separate and distinct, and provided that the judge of probate should perform the duties of each, the case would be different. (1 Neb., 182; 21 Ohio St., 1; 16 Ohio St., 35.)

CONSTRUCTION OF BOND. The bond is to be construed according to the intent of the parties, and in doing this, the court should take into consideration the circumstances under which and the purposes for which it was given, and the obligees

must have known the purpose, etc. Did not defendant know that the object of this bond for $8,000 was to cover duties in his capacity as *ex officio* county treasurer? (23 Iowa, 24.)

A statute requiring a bond, but silent as to the conditions thereof, the conditions are to be found in the object and intention of the statute. (7 Fla., 13.) The whole language of the conditions of a bond is to be taken into consideration in ascertaining its true construction. (10 N. Y., 210; 7 Peters, 122; 10 ibid, 493; 3 Cranch, 229.) The liability of a surety on an official bond is not to be extended beyond the fair scope of its terms. (9 Wheaton, 238.) In bonds given to secure the public, courts will disregard objections purely technical. (8 Iowa, 553.)

In giving the construction to a bond, the court will take into view all the surrounding circumstances, and especially the objects for which the bond was given, and lean to such construction as would make it efficient to accomplish that object; (23 N. Y., 198) and when the intention of the parties is manifest, will suppress insensible words, and supply accidental omissions, in order to give effect to that intention. (8 Ala., 466; 6 Iredell, N. E., 57; 9 ibid, 250; 1 Hawks, 20.)

On question of color of office, and legality of bond: (*Webber v. Blunt*, 19 Wend., 191; *Acker v. Burrall*, 21 Wend., 607; 23 Wend., 607; *Morse v. Hodson*, 5 Mass., 316; *United States v. Hodson*, 10 Wal., 395.) What is meant by constraint: (*United States v. Bradley*, 10 Peters, 343.)

The bond is good as a common law obligation, independent of the statute. (2 Gray, 53, and cases cited; 10 Ohio, 59; 28 N. Y., 322; 1 Dillon Mun. Corp., § 155, notes and cases cited; 10 Wal., 408; Civil Code, p. 367, chap. 3.

Defendant Simonsen has failed to comply with the conditions of the bond, in this:

1. He has not delivered to his successor in office the public funds, books and papers, which he received by virtue of his office.

2. He has not settled with the county commissioners as required by law.

Clay County vs. Simonsen, et al.

3. He either burned or permitted to burn by his own fault the books and records which he received by virtue of his office.

A collector of taxes, by accepting the office, takes the risk of the safe-keeping of the money he has actually received. He is an accountant, a debtor, bound to account for and pay over the money he has collected. The loss of the money, by theft or otherwise, is no excuse for non-performance. This is founded on the nature of his contract, and on grounds of public policy. (12 Cush., 112; 6 Ohio St., 607; 12 Ohio St., 59; 1 Denio, 233; 3 Barr, 372; 3 Penn. St., 373; 18 American, 41; 20 American, 637; 25 N. Y., 274; 12 ibid, 104; 14 American, 62; 22 Ind., 125; 28 ibid, 86; 1 Dil. Munic. Cor., 296; 3 How., [U. S.] 578; 13 Wal., 17 and 57; 37 Iowa, 550.) As to what will excuse the performance of a contract: (25 N. Y., 274; 12 ibid 107; 14 American, 62; Civil Code, page 364, ch. 3.)

The commissioners were authorized to institute this suit, independent of the statute. (26 N.Y., 516.)

Powers and duties of board of county commissioners: (Laws of 1868–9, p. 171, § 16, p. 302, § 101; 1 Dillon, Munic. Corp., 275, n. 1.)

On matter of defense that the county failed and refused to furnish a safe in which to keep the records and funds pertaining to the office of treasurer: (*Halbert v. The State*, 22 Ind., 125.)

No demand upon Simonsen was necessary before commencing suit. It was his duty to pay over all money in his hands, and deliver all books and papers pertaining to his office to his successor, which was not done. When an officer is required to do this by law, and fails, there is a breach without demand. (27 Wis., 506; 2 Gray, 53.)

BENNETT, J.—The parties in their pleadings do not differ materially in their statement of the facts in this case, and they have presented them in such a way as to have the question of defendants' liability determined on demurrer.

It is not my purpose to notice all the points made in the briefs of counsel, or in the order in which they are furnished, but only such as I deem essential to the determination of the

case. And I shall first notice the objections to the paper purporting to be the official bond of Simonsen, and on which suit is brought. It is insisted that it is not a voluntary bond, not such as he could legally be required to execute, for the reason that the penalty ($8,000) is in excess of the statutory requirement, and was extorted under color of office. The first statute enacted in this Territory, relating to the qualification and duties of the judge of probate, was passed at the first session of the Legislative Assembly, and approved April 24, 1862. Section 22 of that act reads as follows: "The judge of probate shall, before he enters upon the duties of his office, execute a bond to the board of county commissioners of his county in the penal sum of four thousand dollars,"etc. At the date of the execution of the bond in suit, this was the only statute in existence relating in terms to the bond of the judge of probate, and if defendants' objection rested solely on this provision, its solution would be freed from many of the perplexing questions that now environ it; but this officer being charged with the performance of other important official duties, by virtue of his office as judge of probate, makes it impossible to properly construe this provision standing alone, but makes the examination of other statutes necessary in order to determine its true intent, scope and purpose. It is an important fact to be borne in mind, that in the act referred to, entitled "An act to provide for county officers," no such an officer as that of county treasurer is named among the officers which all organized counties should have, but section 25 provides that "the several judges of probate shall be county treasurers *ex-officio*, and shall perform all the duties of that office," etc. And the " act prescribing the manner of conducting elections," etc., passed by the same General Assembly, after fixing the day on which the general election should be held, provides for the election of the following officers: "that is to say, a Delegate to Congress and other Territorial officers, * * judge of probate, district attorney," &c., but makes no mention of county treasurer.

It must further be borne in mind that at the date of the execution of said bond there was no provision of statute requiring the judge of probate, as such officer, to give any other or

additional bond for the faithful discharge of his duties as county treasurer; and yet we find in the act relating to revenue, passed at the same session, frequent reference to the county treasurer, and his liability on his official bond. What bond can be meant? Counsel for defendants say no bond, as the treasurer was not required by law to give a bond. If that be so, then all reference to the treasurer's bond in the Revenue act must be meaningless. Such a conclusion cannot be reached without the most cogent reasons, and after all effort to construe the language, according to the rules of reasonable construction, so as to give it force and effect, has failed. What was the evident intention of the Legislature in requiring a bond from the judge of probate?

After a careful examination of all the statutes passed at that same session relating to matters properly cognizable in a probate court, I fail to find a solitary provision making the judge of that court responsible for any money or property, or any mention of his liability on his official bond. Turning again to section 25, chapter 23, laws of 1862, we find the following provision: "They," the several judges of probate, in their capacity as county treasurers *ex-officio*, "shall report the amount of county funds in their hands to the board of county commissioners of their respective counties at their annual meeting, on the first Monday in June of each year, and as often thereafter as demanded by them, and disburse the same subject to their order."

Now can it be contended with any show of reason that the Legislature intended that the bond provided for in section 22, same act, should cover only acts of malfeasance or misfeasance in his office as judge of the probate court, and leave the public revenue coming into his hands as county treasurer wholly unsecured. He was made *ex-officio* county treasurer—that is, by virtue of his office as judge of probate, by virtue of his election to that office alone, was he authorized and empowered to perform these additional duties and receive therefor the emoluments provided by law. There was no provision for a separate qualification or the execution of a separate bond. When he had qualified as judge of probate, and exe-

cuted the bond required, all the duties, responsibilities and emoluments attaching to that office, under the provisions of the statutes, and clearly contemplated by his election, came within the purposes of that qualification, and were covered by the conditions of the bond, unless otherwise specially provided, as in the case of the bond of a justice of the peace, the duties of which office the judge of probate also discharged *ex-officio*.

Throughout years of subsequent legislation, and until the Act of January 15th, 1875, the provisions of said sections 23 and 25 remained unchanged (with but one exception which I shall presently refer to) and in full force.   This subsequent legislation included several acts relating to the revenue, covering the acts and responsibilities of the county treasurer, with numerous allusions to his official bond.

I am clear in the opinion, that under the law as it then stood, when the bond in this suit was executed, the judge of probate was required to execute but one bond, and according to the rules of reasonable construction, and the intent of the Legislature gathered from the wording of the statute and all kindred enactments, that bond covered his duties as county treasurer, and on it he and his sureties must be held liable for any violation by him of the provisions of the Revenue law. I think but little light would be thrown on this question by an examination of the authorities cited, as the decision of most of the cases to which the attention of this court has been called, turned upon the peculiar phraseology of the statutes which the courts were called upon to construe.

This prepares us for an inquiry into the objection that the penalty of the bond in suit, is in excess of the statutory requirement.

And here again I must ask to be excused from following counsel through all the enchanting labyrinths of legal lore, which they in their able arguments have explored, as I think there is no difficulty whatever in finding a solution of the question in the statute.   As above stated the statutes of 1862, providing for the bond of the judge of probate remained unchanged, with one exception, until the Act of January 15, 1875.

In the Revenue act approved January 12th, 1869, we find the following provision, being section 101: " The county commissioners of any one of the counties of this Territory may require the county treasurer to give additional freehold sureties, whenever in the opinion of a majority of said commissioners the existing security shall have become insufficient; and said commissioners are hereby also authorized and empowered to demand and receive from said county treasurer an additional bond, as required by law, in such sum as said commissioners, or a majority of them may direct, whenever in their opinion more money shall have passed, or is about to pass, into the hands of said treasurer than is or would be recovered by the penalty in the previous bond." Here we have the phrases, " additional freehold sureties," " an additional bond," " the previous bond," &c. Additional, must presuppose something to which an addition can be made. "Additional sureties," " additional bond as required by law," and " previous bond" must refer to some bond executed in compliance with the provisions of some statute; and when we come to search for that statute, we find it is the same section 22 of chapter 23, laws of 1862, in which the penalty is fixed at four thousand dollars, a recognition by this General Assembly of the fact that the bond required to be given by the judge of probate covered his duties as county treasurer.

Now that being the bond, the board of county commissioners is authorized and-empowered to require an additional bond in such sum as they may direct. And here it may be claimed that this can only be required after the original bond has been executed. But this, I think, would be a very narrow construction. The law does not require vain things, and it would be worse than folly to hold that the treasurer must first execute a bond in the penal sum of four thousand dollars, enter upon the discharge of the duties of his office, become possessed of money and property in value, it may be ten times in excess of the penalty in the bond, before he can be called upon to give the additional security provided for the protection of the very same funds and property which he already holds and controls. Such a construction might defeat the very object and purpose of this enactment.

It is in the discretion of the board of county commissioners to demand this additional bond, or, which we hold equivalent, an increase in the amount of the penalty, whenever in their opinion more money shall have passed, *or is about to pass*, into the hands of said treasurer than is or would be recovered by the penalty in the previous bond.    If an additional bond may be required after the treasurer has executed one, and entered upon the discharge of the duties of his office, *a fortiori*, may it be done before he qualifies, if in the opinion of the board the sum originally fixed, to-wit: $4,000 is insufficient to cover his probable liability.    It may be required before the money passes; when it is about to pass.

I find in this provision ample authority given the board to increase the penalty in the treasurer's bond, or, to speak more accurately, the bond of the judge of probate, in view of his increased liability as *ex officio* county treasurer, over and above $4,000.00, and it matters not, in contemplation of this statute, whether the security furnished the county is in one, two or three separate instruments, so that the board does not abuse its discretion, and require an unreasonable bond, of which there is no complaint in this case.

This view of the case disposes of the point that the bond was not a voluntary bond, but extorted under color of office.

The rule is well settled that upon the argument of a demurrer to the answer, the defendant may attack the complaint upon the grounds that the court has no jurisdiction, or that the complaint does not state facts sufficient to constitute a cause of action, and if it appears that the objections thus raised are well taken, the defendant will be entitled to judgment, notwithstanding the defects in the answer. (2 Wait's Practice, 466, and authorities cited.)

Under this rule, counsel for defendants have urged various objections to the complaint, the first of which is that there is no breach of the bond sufficiently alleged.    The allegation in the complaint is as follows:

" That thereafter, to-wit: on or about the 22d day of January, 1875, defendant R. J. Simonsen resigned his said office to the board of county commissioners of said county, who

thereupon appointed as his successor in said office, William Shriner; that said William Shriner has long since filed his bond, properly approved as the law directs, and entered upon the discharge of the duties of said office, but that said R. J. Simonsen has failed and refused, and still fails and refuses to account for said money, books, records, papers and documents, or any part thereof, or to deliver the same to his successor in office, or to any other person or persons authorized by law to receive the same."

The law in force at the time of the alleged breach (§ 36, ch. 4, laws 1868-9) required the county treasurer to render his account to, and settle with, the county commissioners, at the time required by law, and pay into the county treasury any balance which may be due the county. The commissioners might require the treasurer to settle with them at any time, but he was absolutely required to make full and complete settlements at three particularly designated times; these were on the first Mondays of May and October of each year, (§ 80, ch. 25, laws 1868-9) and a final one on going out of office, when it is made his duty to deliver to his successor in office all public moneys, books, accounts, papers and documents in his possession. (§ 98, ibid.)

What it might have been necessary for the commissioners to have done, and the complaint to have stated, different, had this case originated in one of the semi-annual settlements, or one made or refused on demand of the board, or whether the requirements of the statutes are the same in all cases, it is unnecessary here to discuss. This case is one where the treasurer, *on going out of office*, has failed and refused to settle and account.

There are three acts of omission on the part of the treasurer, specifically mentioned in the statute, (§ 99, ibid) which constitute a breach of his official bond, for any one of which upon its occurrence, suit may be brought. These are: 1, If he shall fail to make return; 2, Fail to make settlement; or, 3, Fail to pay over all money with which he may stand charged, at the time and in the manner prescribed by law.

The pleadings in this case disclose the fact that defendant Simonsen has wholly failed and neglected to comply with any one of these requirements; he has failed to make return; he has failed to make settlement, and he has failed to pay over all the money with which he stands charged, at the time and in the manner prescribed by law.    How do defendants seek to avoid this?  1. On the ground, as alleged, that the board of county commissioners had not adjusted Simonsen's accounts as required by statute, and 2, on the ground that there is no allegation in the complaint of any demand upon the treasurer to report the funds in his hands.

Section 37, chapter 4, laws 1868-9 provides that "if any person thus chargeable, shall neglect or refuse to render true accounts, or settle as aforesaid, the county commissioners shall adjust the accounts of such delinquent, according to the best information they can obtain, and ascertain the balance due the county, and order suit to be brought in the name of the county therefor."    This provision makes it the imperative duty of the board to ascertain the balance due the county and order suit brought.    How are they to ascertain the balance due, when the person chargeable neglects or refuses to render true accounts?  "According to the best information they can obtain."    Can it be claimed that that information, the source from which it was obtained, the basis on which the computation or calculation was made, with copies of all record entries, papers, vouchers, &c., if any, used or examined by the board in adjusting the accounts, should be alleged and set out in the complaint?  Certainly not.    The words, " facts constituting a cause of action," as used in our Code of Civil Procedure, mean those facts which the evidence upon the trial will prove, and not the evidence which will be required to prove the existence of the facts.    Every fact which the plaintiff must prove, to enable him to maintain his suit, and which the defendant has a right to controvert in his answer, must be distinctly averred and set forth according to their legal effect and operation, and not the evidence of those facts, nor arguments, nor inferences, nor matters of law only.    It is error to assume that there can be no breach on part of the treasurer

of his official bond, without assistance from the board of county commissioners; it doubtless takes two parties to make a contract, but it requires only one to break it; and section 37, *supra*, clearly contemplates that the conditions of the bond have already been broken, and directs the commissioners how to proceed—not in the interest of the treasurer, but for the protection of the rights of the public; not for the purpose of perfecting the breach, but to enforce the penalty. As before stated, this action does not originate in one of the semi-annual settlements, or on demand of the board at a time not fixed by statute, but *upon the treasurer going out of office*, and having failed to make return, failed to make settlement, and failed to pay over the funds with which he stands charged, and to the custody and control of which he no longer has any possible right, he cannot be permitted to treat the matter with such cool indifference, and say to the board: examine my returns, when he has made none; adjust my accounts, when he has rendered none; count the money due from me to the county, when he has failed to produce it. The object of the statute in directing an adjustment by the board, is that they may be able as far as possible to ascertain the balance due, to enable suit to be brought, and that the proper allegation of liability may be made in the complaint; and it is unnecessary for the complaint to contain any allegation of adjustment by the board, it will be presumed that the board took the necessary steps to ascertain the material facts before ordering suit brought, and that could be the only object contemplated. Any adjustment made by the board would not be conclusive, and if suit were brought for more than the amount due it could not prejudice the rights of either party.

The second point, that there is no allegation in the complaint of any demand upon the treasurer to report the funds in his hands, is not well taken. Upon going out of office it is made his imperative duty to deliver to his successor in office all public moneys, books, accounts, papers, and documents in his possession. This presupposes a return made by him, an adjustment of his accounts, and settlement with the board. He should, at that time, exhibit to the board, without de-

mand, for the obligation is one imposed by statute, the exact condition of the affairs of his office, and have then and there all the public funds, records, &c., pertaining to his office, and in his possession, ready to be turned over to his successor. A failure in this respect will constitute a breach of the conditions of his bond, and he cannot shield himself from liability by the childish plea, that no one demanded of him the performance of his sworn duty. (*Joint School Dist. No. 1. v. Lyford, et. al.*, 27 Wis., 506.) The policy of the law is to hold the financial agents of the government to the strictest accountability, and when their duty is plainly pointed out by statute, they must perform it, without demand or notification. The proposition that a public officer, in charge of public funds and property, on retiring from his office, either at the expiration of his term or on resignation, is under no obligation to settle and turn over such funds and property, except on demand, when the law clearly designates the body with whom he shall make settlement, and the person to whom he shall transfer, carries upon its face its own refutation, and I shall dismiss it without further comment.

We hold that the facts stated in the complaint are sufficient to constitute a cause of action; that the instrument sued on is a valid legal bond, substantially complying with the requirements of the statute, and covering the duties of judge of probate in his capacity as *ex-officio* county treasurer, and that for the breaches alleged, the principal and his sureties are liable, unless the matters pleaded in the answer are sufficient to constitute a defense.

The conditions of the bond are absolute, and provide that he " shall well and faithfully and impartially perform the duties and execute the office  *  *  without fraud, deceit or oppression." These duties are defined by the provisions of the statute, and the performance of them is only well done, faithful and impartial, when in strict compliance with these provisions; and under these provisions and the obligations of his bond, he is bound, not to exercise due care and diligence in the discharge of his duty, but to perform it absolutely, without conditions or exceptions, unless the party can estab-

lish facts that bring his excuse within the following provisions of our Civil Code (Sec. 855): "The want of performance of an obligation, or an offer to perform, in whole or in part, or any delay therein, is excused by the following causes, to the extent to which they operate: *.* "2. When it is prevented or delayed by an irresistable super-human cause, or by the act of public enemies of this Territory or of the United States, unless the parties have expressly agreed to the contrary." I omit subdivision 1 and 3 of this section, as under the pleadings they can have no application to this case. Now, the only allegation in the answer that savors of an excuse for non-performance, is stated in the following words: " That on the said 13th day of January, 1875, the said building, and in it all the said money, books, records and documents, were utterly consumed and destroyed by fire, without any want of reasonable care and diligence on the part of said defendant Simonsen, in the care and preservation thereof, so that all the same were entirely lost to the said Simonsen and this plaintiff, and no part thereof has ever been recovered or restored." The liability of the treasurer, upon a bond of the character of the one in suit, being that of an insurer, and not measured by the law of bailments. (*Hancock v. Hazard*, 12 Cushing, 112; *Muzzy v. Shattick, et. al.*, 1 Denio, 233; *Commonwealth v. Conly*, 3 Penn. St., 372; *The State v. Harper*, 6 Ohio St., 607; *Pearly v. Muskegon Co.*, 32 Mich., 132; 1 Dillon Mu. Cor., 296.) The material inquiry now presented is, can destruction by fire come within the definition of " an irresistable super-human cause?" I understand these words to be equivalent to, and used in the same sense as " act of God," which Lord Mansfield says " is natural necessity, as wind and storms, which arise from natural causes, and is distinct from inevitable accident." Parsons (2 Contracts, 159,) defines the phrase to mean, " a cause which operates without any aid or interference from man. For if the cause of loss was wholly human, or became destructive by human agency and co-operation, then the loss is to be ascribed to man and not to God, and to the carriers negligence, because it would be dangerous to the community to permit him to make a defense which

might so frequently be false and fraudulent." If this rule and reasoning can be applied to a common carrier, with how much more force may we include the public officer entrusted with the safe keeping and disbursement of public funds.

In Greenleaf on Evidence, (2 Vol., § 219,) the learned author, after giving Lord Mansfield's definition of the phrase, uses the following language: "Therefore if the loss happened by the wrongful act of a third person, *or by an accidental fire*, not caused by lightning, * * * the carrier is liable." Citing *Hyde v. Trent & Mersey Nav. Co.*, 5 T. R., 387, and *Forward v. Pittard*, 1 T. R., 27. The same doctrine has been held in the case of *The Dist. Tp. of Union v. Smith*, 39 Iowa, 9.

Accidental fire, therefore, not caused by lightning, is not "an irresistable super-human cause," and will not excuse from the performance of an obligation unless specially so stipulated, or when the party is bound only to the exercise of reasonable care and diligence, (*Ross v. Hatch*, 5 Iowa, 149,) and no such facts appearing from the pleadings in this case, these points need not be noticed.

The case of *District Township of Taylor v. Morton*, 37 Iowa, 550, was an action brought against defendant on his official bond as the treasurer of plaintiff. The law required him to give bond "conditioned for the faithful performance of his duty," and the condition of his bond read, "if the said Morton, as treasurer, shall faithfully and impartially discharge the duties of said office as required by law," etc.

The allegation in relation to the loss of the property, was in similar language to the answer in this case, except it was there alleged that the money was stolen; here it was burned. Mr. Chief Justice Beck, in delivering the opinion of the Court, says:

"His liability rests on the conditions of his bond, and if by them he is required to do an act which, without his fault, becomes impossible on account of anything occurring subsequently to the contract, he will not be released. These rules are applicable to all contracts, and the public interests demand that, at this day, when public funds in such vast amounts are committed to the custody of such an immense

number of officers, they should not be relaxed when applied to official bonds. A denial of their application in such cases would serve as an invitation to delinquencies, which are already so frequent as to cause alarm."

This we deem settled law; and settled too on the highest considerations of public policy, as well as in strict justice to those who by their solemn obligations undertake to answer for the custody and safe keeping of public funds and property. It is the well recognized doctrine of the Supreme Court of the United States, as held in the following cases: *The United States v. Prescott*, 3 How., 578; *The Harriman*, 9 Wal., 161; *Boyden, v. United States*, 13 ibid, 17; *The United States v. Thomas*, 15 ibid, 337; see, also, *Harmony v. Bingham*, 12 N. Y., 99; *Tompkins v. Dudley*, 25 N. Y., 272; *The Dist. Tp. of Union v. Smith*, supra; *Fowler, et. al. v. Bott, et. al.*, 6 Mass., 63; *School Dist. No. 1. v. Dauchey*, 25 Conn., 530.

In commenting on the phraseology of the statute requiring the treasurer on going out of office to deliver to his successor in office all public moneys, books, &c., in his possession, much stress has been laid by counsel for defendant on the last three words, "*in his possession*." And it has been insisted that the property having been destroyed by fire, is not in his possession, and therefore could not be turned over. Neither would it have been any more in his possession had it been stolen, or by him embezzled and transferred to the possession of a guilty confederate. The position is a very lame one. The law presumes the treasurer to have possession of all public funds and property that may have come into his hands by virtue of his office, and which he has not paid out or disposed of in some manner authorized and prescribed by statute. If he has not the funds or property in his possession, and cannot show that they have been applied and disposed of as directed by law, and can plead no legal excuse for the non-performance of his obligation, then he must answer on his bond. Any other rule would be dangerous to community, and open the door to all manner of villainy, by " encouraging defenses which would so frequently be false and fraudulent."

The fact that plaintiff failed to furnish a safe on request of defendant Simonsen, is no excuse for the non-performance of his obligation.    He became personally responsible, and in the absence of any statutory provision, must provide for the safe keeping of the funds and property coming into his hands, the same as a common carrier.    (*Halbert, et. al. v. The State*, 22 Ind., 125.)

There is one other point made by counsel for appellants, which should have been noticed in its proper place..    It is insisted that the words, "without fraud, deceit, or oppression," contained in the conditions of the bond, explain the preceding language, and are a limitation on defendant Simonsen's liability.    This cannot be (admitting this to be words of limitation, which is not at all clear,) unless authorized to be inserted by the statute, which is not claimed in this case.    A party assuming the duties and responsibilities of a public official trust, takes it with all the obligations and liabilities imposed by law, and cannot be permitted to engraft into his bond conditions foreign to the statutory provisions for the purpose of limiting the legal obligations imposed.    If such language is used it will be treated as surplusage, and advantage cannot be taken of it for the purpose of avoiding legal liability.

Finding no error in the record, the judgment of the court below sustaining plaintiff's demurrer to the answer is affirmed and the cause remanded for such other and further proceedings as may be authorized by law.